PAUL D. CLEMENT*
MICHAEL F. WILLIAMS
CHRISTOPHER G. MICHEL*
ANDREW C. LAWRENCE*
KIRKLAND & ELLIS LLP
655 Fifteenth Street, NW
Washington, DC 20005
(202) 879-5000
michael.williams@kirkland.com

JUSTIN T. QUINN
ROBINSON MILLER LLC
One Newark Center
19th Floor
Newark, NJ 07102
(973) 690-5400
jquinn@rwmlegal.com

*Counsel for Plaintiffs*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| BRITTAN B. HOLLAND, individually and on behalf of all others similarly situated, and LEXINGTON NATIONAL INSURANCE CORPORATION;<br><br>*Plaintiffs*,<br><br>v.<br><br>KELLY ROSEN, Pretrial Services Team Leader; MARY E. COLALILLO, Camden County Prosecutor; CHRISTOPHER S. PORRINO, Attorney General of New Jersey;<br><br>*Defendants*. | No. _____ |

## CLASS ACTION COMPLAINT

* *Pro hac vice* motions to be filed.

1

**Local Civil Rule 10.1(a) Statement**

Pursuant to Local Civil Rule 10.1(a), the mailing addresses of the parties to

this action are as follows:

Brittan B. Holland
3 Madeley Court
Sicklerville, NJ 08081

Lexington National Insurance Corporation
11426 York Road
Cockeysville MD  21030

Kelly Rosen
Superior Court of New Jersey, Camden Vicinage
101 South 5th Street
Camden, NJ 08103

Mary E. Colalillo
Camden County Prosecutor's Office
25 North 5th Street
Camden, NJ 08102

Christopher Porrino
Richard J. Hughes Justice Complex
25 Market Street
P.O. Box 080
Trenton, NJ 08625

Plaintiff Brittan B. Holland, on behalf of himself and all others similarly situated, and Plaintiff Lexington National Insurance Corporation (collectively "Plaintiffs"), bring this action against Defendants Kelly Rosen, Mary Colalillo, and Christopher S. Porrino (collectively "Defendants"), and allege the following:

## PRELIMINARY STATEMENT

1.     Plaintiff Holland stands accused but unconvicted of a crime.  Under bedrock principles of American law, he is presumed innocent.  And like all innocent people, he is presumptively entitled to liberty from any pre-trial restraint.

2.     For centuries, the mechanism for ensuring a defendant's liberty from pre-trial restraint was monetary bail.  A person accused but unconvicted of a bailable offense could not be subject to any pre-trial deprivation of liberty without the option of bail, unless the government showed that no amount of money would serve the government's interest in securing the defendant's future appearance (or, more recently, that detention was necessary to protect the community from danger).  Bail is thus a liberty-preserving mechanism as old as the Republic.

3.     The availability of bail is enshrined in the Bill of Rights.  The Eighth Amendment forbids "[e]xcessive bail," a protection that presupposes the option of bail.  And the vast majority of state constitutions throughout American history, including New Jersey's, have likewise guaranteed defendants (in all but capital cases) the option of bail before being subjected to pre-trial deprivations of liberty.

4.      The option of bail to avoid pre-trial deprivations of liberty no longer exists in New Jersey.  Under the Criminal Justice Reform Act ("CJRA"), which took effect January 1, 2017, New Jersey courts may not consider releasing a defendant on bail unless they first conclude that no combination of non-monetary conditions—including substantial deprivations of pre-trial liberty like home detention or 24-hour electronic monitoring through an "ankle bracelet"—will ensure the defendant's appearance at trial.  Thus, no matter how much an accused would prefer posting bail and securing his liberty, New Jersey law mandates that home detention or an electronic monitoring device be imposed instead.

5.      Plaintiff Holland's experience is illustrative.  He was arrested after an alleged bar fight and charged with assault.  He has a job, a supportive family, a residence in the community, and part-time custody of his son.  Given his ties to the community and lack of a criminal record, he would have been eligible for release on bail before New Jersey's enactment of the CJRA.  And he could have paid a non-excessive amount of bail to secure his future appearance, likely with the help of a surety company like Plaintiff Lexington National.  He then would have enjoyed his full pre-trial liberty, just like any other presumptively innocent member of society.

6.      Instead, under the CJRA, the court never had the option to set bail, let alone to give Plaintiff Holland the opportunity to post it.  Instead, relying on a new "risk assessment tool," the court concluded that Plaintiff Holland's appearance could

be secured by a set of restrictive non-monetary conditions, including home detention, an electronic monitor that he must wear around his ankle constantly and that tracks his movement 24 hours a day, and a requirement that he report to the pre-trial services office every two weeks—even if it disrupts his job. As a result, Plaintiff Holland's liberty is sharply curtailed. Among other things, he cannot shop for food or basic necessities and cannot take his son to baseball practice, an important aspect of his custodial responsibilities and his efforts to bond with his child.

7.    Thousands of other New Jersey defendants have been, and will continue to be, subjected to similar life-altering, liberty-restricting conditions without ever receiving the option of bail. And they are not the only ones harmed. The CJRA largely eliminates the business of commercial sureties like Plaintiff Lexington National, which help criminal defendants obtain their pre-trial freedom without infringing on their civil liberties.

8.    The CJRA deviates from three centuries of American criminal practice. The state believes its new approach will reduce the number of detained defendants who cannot afford bail, and Plaintiffs have no quarrel with that general objective. But the state can achieve that goal while offering both monetary bail and other conditions, as appropriate. What New Jersey may not do is restrict the liberty of presumptively innocent defendants without offering the one alternative to substantial pre-trial deprivations that the Constitution expressly protects—monetary bail.

## JURISDICTION AND VENUE

9.      This action seeks declaratory and injunctive relief, damages, and other relief pursuant to 28 U.S.C. §§2201 and 2202 and 42 U.S.C. §§1983 and 1988.

10.     This Court has subject-matter jurisdiction over Plaintiffs' federal constitutional claims pursuant to 28 U.S.C. §§1331 and 1343(a)(3).

11.     Venue is proper pursuant to 28 U.S.C. §1391(b)(2).

12.     There is an active, justiciable controversy between the parties over whether Defendants' imposition of liberty-restricting conditions of pre-trial release on Plaintiff Holland and other presumptively innocent criminal defendants— including prospective clients of sureties like Plaintiff Lexington National—without providing the option of monetary bail violates the Constitution.

13.     Declaratory relief will resolve this controversy and eliminate the burden imposed on Plaintiffs' constitutional rights.

14.     A preliminary injunction preventing Defendants from enforcing the challenged statutory provisions will shield Plaintiffs' constitutional rights from ongoing harm while this litigation is pending.

15.     A permanent injunction against Defendants, preventing them from enforcing the challenged statutory provisions, will protect Plaintiffs' rights prospectively after final resolution of this matter.

**PARTIES**

16.    Plaintiff Brittan B. Holland is a citizen of New Jersey who resides in Sicklerville.  Plaintiff was arrested April 6, 2017, and charged with second-degree aggravated assault, N.J.S.A. 2C:12-1b(1), based on his alleged role in a bar fight. Plaintiff has a job, a supportive family, and a residence in the community, and he could have paid a non-excessive amount of bail required to assure his future appearance.  Under New Jersey law, however, the court could not offer him that option, but instead had to consider whether non-financial conditions would assure his appearance before considering bail.  The court determined that a combination of non-financial conditions—including home detention, mandatory electronic monitoring through a GPS-tracking ankle bracelet worn 24 hours a day, and rigid pre-trial reporting requirements—would do so, and accordingly imposed those conditions without giving Plaintiff Holland the option of posting bail.

17.    Plaintiff Lexington National is a Florida corporation based in Maryland and licensed to do business and operating extensively in New Jersey.  Lexington National operates through independent bail bondsmen who are licensed by the New Jersey Department of Insurance and registered with the Superior Court clerk. Lexington National stands ready, willing, and able to issue and post a bail bond to Plaintiff Holland and others similarly situated.

18.     Defendant Kelly Rosen is the Team Leader for Pretrial Services in the Criminal Division of the Superior Court of New Jersey, Camden Vicinage. Defendant Rosen is responsible for enforcing the conditions of release against Plaintiff Holland.   Defendant Rosen is sued for declaratory and injunctive relief in her official capacity and for damages in her personal capacity.

19.     Defendant Mary Colalillo is the Camden County Prosecutor. Defendant Colalillo is responsible for enforcing New Jersey laws in Camden County, including the provisions of the CJRA challenged here.   N.J.S.A. 2A:158-5. Defendant Colalillo would be responsible for any additional prosecution or other action taken against Plaintiff Holland in conjunction with the conditions of his pre-trial release.  Defendant Colalillo is sued for declaratory and injunctive relief in her official capacity and for damages in her personal capacity.

20.     Defendant Christopher S. Porrino is the Attorney General of New Jersey.  Defendant Porrino is responsible for enforcing New Jersey laws statewide, including the provisions of the CJRA challenged here.  Defendant Porrino would be responsible for any additional prosecution or other action taken against Plaintiff Holland in conjunction with the conditions of his pre-trial release.   Defendant Porrino is sued for declaratory and injunctive relief in his official capacity and for damages in his personal capacity.

**FACTUAL ALLEGATIONS**

**A.    Historical and Constitutional Background**

21.    "Bail … is basic to our system of law." *Schilb v. Kuebel*, 404 U.S. 357, 365 (1971).  With roots tracing to the "ancient practice[s]" of English common law and the Magna Carta, bail has preserved the "traditional right to freedom before conviction" for almost a thousand years.  *Stack v. Boyle*, 342 U.S. 1, 4 (1951).

22.    The defining documents of English liberty—the Statute of Westminster of 1275, the Petition of Right of 1628, the Habeas Corpus Act of 1679, and the English Bill of Rights of 1689—all recognize a defendant's right to bail.  *See Cobb v. Aytch*, 643 F.2d 946, 958 n.7 (3d Cir. 1981) (en banc).

23.    Early American authorities likewise recognized the right to bail.  The Northwest Ordinance, adopted by the Continental Congress in 1787, provided that "[a]ll persons shall be bailable, unless for capital offenses where the proof should be evident, or the presumption great."  1 Stat. 50, 52.  The Judiciary Act of 1789, adopted on the same day that Congress proposed the Bill of Rights to the States for ratification, directed that "upon all arrests in criminal cases, bail shall be admitted except where the punishment may be death."  1 Stat. 73, 91.

24.    Against this backdrop in which the right to bail was presumed, the People ratified the Eighth Amendment, which provides "[e]xcessive bail shall not be required."

9

25.    State constitutions, too, have overwhelmingly recognized a right to bail as an option to avoid pre-trial deprivations of liberty.  "[E]very state that entered the Union after 1789, except West Virginia and Hawaii, guaranteed a right to bail in its original state constitution."  Donald B. Verrilli, Jr., *The Eighth Amendment and the Right to Bail: Historical Perspectives*, 82 Colum. L. Rev. 328, 351 (1982).

26.    The right to bail is not absolute.  Courts may deny bail to a defendant if no amount of money will assure his appearance at trial or the safety of the community. *United States v. Salerno*, 481 U.S. 739, 746-55 (1987).  And legislatures may define categories of crimes, such as capital offenses, or other "special circumstances" in which detention without bail may be permitted. *Id.* at 749.

27.    But outside such "carefully limited" exceptions, *id.* at 755, the Constitution has always guaranteed a defendant the opportunity to avoid pre-trial deprivations of liberty through non-excessive monetary bail.

**B.    Bail in New Jersey**

28.    For more than three centuries, New Jersey recognized the "right of the individual to bail" as "a fundamental right founded in freedom and human dignity, reflected in the everpresent presumption of innocence, and requiring firm articulation in [state] Constitutions." *State v. Johnson*, 61 N.J. 351, 355, 360 (1972).

29.     The 1682 Laws of the Province of East Jersey provided that "all persons arrested shall be bailable by sufficient sureties," with a narrow exception for "capital offenses, where proof is evident or presumption great." *Id.* at 354.

30.     New Jersey's 1844 Constitution incorporated that same protection for monetary bail, providing that "[a]ll persons shall, before conviction, be bailable by sufficient sureties, except for capital offences, when the proof is evident or presumption great." N.J. Const. of 1844, art. I, §10.

31.     New Jersey's 1947 Constitution retained the same longstanding right to bail "by sufficient sureties, except for capital offences, when the proof is evident or presumption great." *Id.*; N.J. Const., art. I, §11.

32.     Consistent with the historic purpose of bail to ensure the appearance of the defendant at trial, New Jersey for more than three centuries did not permit courts to consider a defendant's potential dangerousness in setting bail.

**C.     The Challenged Law**

33.     In 2012, Governor Christie called for a state constitutional amendment to reverse New Jersey's historic practice and permit pre-trial detention of defendants deemed likely to commit future crimes.

34.     New Jersey's Chief Justice then established and chaired the Joint Committee on Criminal Justice, which included members from all three branches of state government. In March 2014, the committee produced a report recommending

11

that the state authorize pre-trial detention based on a defendant's perceived dangerousness and that the state replace the traditional system of release on monetary bail with a new "risk-based instrument" that would "aid judges as they craft conditions of release … like electronic monitoring, house arrest, and reporting." N.J. Judiciary, *Report of the Joint Committee on Criminal Justice* 2-3 (Mar. 10, 2014), available at http://bit.ly/2pyNFUV ("Joint Committee Report").

35.    Soon after publication of the Joint Committee Report, the New Jersey legislature passed (in a special session, through procedurally deficient mechanisms) and Governor Christie signed the CJRA, which dramatically changed the state's pre-trial detention and release procedures, largely in keeping with the committee's recommendations.  *See* P.L. 2014, c.31, §1 (codified at N.J.S.A. 2A:162-15 *et seq.*).

36.    The CJRA creates a five-stage, hierachical process for courts to follow in making pre-trial custody determinations for defendants charged with offenses through a complaint-warrant.  N.J.S.A. 2A:162-16d(1); *see State v. Robinson*, No. 078900, 2017 WL 1908548, at *6 (N.J. May 10, 2017) (describing this "hierarchy").

37.    *First*, the court "shall order" the pre-trial release of the defendant on personal recognizance or execution of an unsecured appearance bond (in essence, a promise to appear) when the court finds that such a release would "reasonably assure the eligible defendant's appearance in court when required, the protection of the

safety of any other person or the community, and that the eligible defendant will not obstruct or attempt to obstruct the criminal justice process."  N.J.S.A. 2A:162-17a.

38.    *Second*, if the court finds at stage one that release on personal recognizance or an unsecured appearance bond will not provide the requisite assurance, the court "may order" pre-trial release subject to the conditions that the defendant "not commit any offense during the period of release … avoid all contact with an alleged victim of the crime … [and] avoid all contact with" witnesses who may testify concerning the offense.  N.J.S.A. 2A:162-17b(1).

39.    The court may then add "the least restrictive condition, or combination of conditions, that the court determines will reasonably assure the eligible defendant's appearance in court when required, the protection of the safety of any other person or the community, and that the eligible defendant will not obstruct or attempt to obstruct the criminal justice process."   N.J.S.A. 2A:162-17b(2); *see Robinson*, 2017 WL 1908548 at *6.  Those conditions "may include," *inter alia*:

- remaining "in the custody of a designated person";
- restrictions "on personal associations, place of abode, or travel";
- reporting "on a regular basis to a designated law enforcement" or other government agency;
- complying "with a specified curfew";
- refraining from possessing a firearm;
- undergoing medical or psychological treatment;
- returning "to custody for specified hours following release for employment, schooling, or other limited purposes";

- placement "in a pretrial home supervision capacity with or without the use of an approved electronic monitoring device," including at the defendant's expense; and
- "any other condition" necessary to provide the requisite assurances.

N.J.S.A. 2A:162-17b(2).

40.    *Third*, if the court "does not find, after consideration" at stage two of all the conditions described above that release subject to *any combination* of these conditions "will reasonably assure the eligible defendant's appearance in court when required," the court then, *and only then*, "may order the pretrial release of the eligible defendant on monetary bail." N.J.S.A. 2A:162-17c(1). In other words, "[m]onetary bail may be set for an eligible defendant only when it is determined that *no other conditions of release* will reasonably assure the eligible defendant's appearance in court when required." N.J.S.A. 2A:162-15 (emphasis added).

41.    In addition, the court "may only impose monetary bail … to reasonably assure the eligible defendant's appearance." N.J.S.A. 2A:162-17c(1). "The court shall not impose the monetary bail to reasonably assure the protection of the safety of any other person or the community or that the eligible defendant will not obstruct or attempt to obstruct the criminal justice process, or for the purpose of preventing the release of the eligible defendant." *Id.*

42.    *Fourth*, if the court "does not find, after consideration" that either non-monetary conditions alone (as assessed at stage two) or monetary bail alone (as

14

assessed at stage three) will provide the requisite assurances, the court may order pre-trial release subject to a combination of non-monetary conditions and monetary bail.  N.J.S.A. 2A:162-17d(1).

43.    *Finally*, if the prosecutor seeks pre-trial detention and the court finds by "clear and convincing evidence that no amount of monetary bail, non-monetary conditions of pretrial release or combination of monetary bail and conditions would reasonably assure the eligible defendant's appearance in court when required, the protection of the safety of any other person or the community, and that the eligible defendant will not obstruct or attempt to obstruct the criminal justice process," the court can order pre-trial detention.  N.J.S.A. 2A:162-18a(1).

44.    At every stage, the process includes consideration of the result of a statutorily mandated "risk assessment" conducted with a new "risk assessment instrument" that is purportedly "objective, standardized, and developed based on analysis of empirical data and risk factors relevant to the risk of failure to appear in court when required and the danger to the community while on pretrial release." N.J.S.A. 2A:162-25.

45.    In November 2014, New Jersey voters approved a constitutional amendment replacing the centuries-old guarantee that "[a]ll persons shall … be bailable by sufficient sureties," except in some capital cases, with a provision that "[p]retrial release may be denied to a person if the court finds that no amount of

monetary bail, non-monetary conditions of pretrial release, or combination of monetary bail and non-monetary conditions would reasonably assure the person's appearance in court when required, or protect the safety of any other person or the community, or prevent the person from obstructing or attempting to obstruct the criminal justice process."  N.J. Const. art. I, §11.

46.    In sum, the CJRA "changed the landscape of the State's criminal justice system," replacing a system that guaranteed a monetary bail determination to all defendants except those in certain capital cases with a system that authorizes pre-trial detention based on perceived dangerousness and imposition of severely restrictive conditions such as electronic monitoring and home detention without any opportunity to post monetary bail.  *Robinson*, No. 078900, 2017 WL 1908548, at *4.

47.    Defendant Porrino has confirmed that the "Bail Reform Law is intended to end New Jersey's historical reliance on monetary bail."  Christopher S. Porrino, Attorney General of New Jersey, *Attorney General Law Enforcement Directive No. 2016-6*, at 55 (Oct. 11, 2016), available at http://bit.ly/2pjHDeP.

48.    According to Defendant Porrino, monetary bail is "a last resort" that is reserved only for "limited situations"—*i.e.*, "when the court finds that release on non-monetary conditions will not reasonably assure the defendant's appearance in court when required."  *Id.*  In other words, "there shall be a presumption against seeking monetary bail."  *Id.* at 56.

49.     New Jersey's courts are also instructed to prioritize non-monetary conditions of pre-trial release over monetary bail.  Under the New Jersey Rules of Court, a court has no authority to consider monetary bail unless and until it considers and rejects non-monetary pre-trial release options.  *See, e.g.*, Rule 3:26-1(a)(1) ("[M]onetary conditions may be set for a defendant but only when it is determined that no other conditions of release will reasonably assure the defendant's appearance in court when required.").

50.     Criminal defendants subject to non-monetary conditions of release have no authority to challenge the conditions unless "there has been a material change in circumstance that justifies a change in conditions."  Rule 3:26-2(c).

### D.    The Impact of the Challenged Law

51.     New Jersey's new pre-trial release and detention procedures took effect January 1, 2017.

52.     According to the state's preliminary statistics, in the first three months of 2017, New Jersey courts granted 1,262 pre-trial detention motions from prosecutors—a procedural mechanism that allows detention without the consideration of bail and that did not exist before the new law.  N.J. Courts, *Criminal Justice Reform Statistics: January 2017-March 2017*, Chart A, http://bit.ly/2q68u9Y.

53.     According to the same statistics, approximately 7,579 individuals were released subject to non-monetary conditions in the first three months of 2017,

including 1,286 who were released subject to the most severe conditions including home detention and electronic monitoring.  *Id.*

54.     Although New Jersey appears not to have issued official statistics on the number of defendants released on monetary bail under the new law, one prominent newspaper reported that of "the 3,382 cases statewide that were processed in the first four weeks of January, judges set bail only three times."  Lisa W. Foderaro, *New Jersey Alters its Bail System and Upends Legal Landscape*, N.Y. Times (Feb. 6, 2017), http://nyti.ms/2llmeMR.

55.     Thus, while bail remains a theoretical option, "the reality is that judges have nearly done away with it."  *Id.*; *see also* Nicole Hong & Shibani Mahtani, *Cash Bail, a Cornerstone of the Criminal-Justice System, Is Under Threat*, Wall St. J. (May 22, 2017), http://on.wsj.com/2qHz5hb (describing impact on bail industry).

56.     Plaintiff Lexington National is one of many commercial sureties that has been severely harmed by the drastic reduction in the number of defendants given the option of monetary bail under the new law.

57.     If New Jersey criminal defendants had the option of monetary bail, Plaintiff Lexington National would help them to take advantage of that option.

58.     Plaintiff Lexington National thus asserts both its own constitutional rights and those of potential customers.  *See, e.g.*, *Dep't of Labor v. Triplett*, 494 U.S. 715, 720 (1990).

### E.    The Challenged Law Applied to Plaintiff Holland

59.    On April 6, 2017, Plaintiff Brittan B. Holland was arrested for his alleged participation in a bar fight.

60.    Plaintiff Holland was then detained in the Camden County jail.

61.    Plaintiff Holland was charged with second-degree aggravated assault in violation of N.J.S.A. 2C:12-1b(1).

62.    Plaintiff Holland has a job and lives in the community.

63.    Plaintiff Holland has no prior criminal record.

64.    Plaintiff Holland has a supportive family and part-time custody over his son.

65.    Under the system of monetary bail that existed in New Jersey for more than three hundred years before January 1, 2017, a court could have set reasonable, non-excessive monetary bail to ensure Plaintiff Holland's appearance at trial.

66.    Under the bail schedules promulgated by the Administrative Office of the Courts, bail likely would have been set at $35,000 to $100,000, with a 10 percent cash bail option.  *See* Revised Statewide Bail Schedules at 23 (Dec. 30, 2016), available at http://bit.ly/2pwj4qy.

67.    If bail had been set, Plaintiff Holland would have used his own financial resources and/or those of his family (likely with a surety company such as Plaintiff Lexington National) to pay the required amount for release.

68.    The CJRA barred the court from setting monetary bail unless it first determined that no combination of non-monetary conditions—including highly restrictive conditions such as home detention and electronic monitoring—would reasonably assure Plaintiff Holland's appearance at trial.

69.    Prosecutors initially sought to detain Plaintiff Holland pending trial.

70.    Faced with the threat of pre-trial detention and no prospect of release on monetary bail, Plaintiff Holland agreed to accept release subject to several of the most draconian non-monetary conditions, which the court found (unsurprisingly) would ensure his appearance at trial.

71.    The court ordered Plaintiff Holland's release subject to non-monetary conditions including home detention, electronic monitoring through a GPS-tracking ankle bracelet that he must wear 24 hours a day, and regular reporting to pre-trial services—even if the trips would create "work issues."  Hr'g Audio 1:48-1:52, *State v. Holland*, No. W-2017-390-436 (N.J. Super. Ct. Law Div. Apr. 11, 2017).

72.    The court did not—and could not, under the CJRA, court rules, and directives—consider releasing Plaintiff Holland subject to monetary bail.

73.    Home detention is a severe restriction of Plaintiff Holland's liberty. Among other burdens, home detention means that Plaintiff Holland cannot shop for basic necessities such as food.

74.    In addition, Plaintiff Holland cannot participate in important family activities like taking his son to baseball practice—an important aspect of his custodial responsibilities and his efforts to bond with his child.

75.    An ankle bracelet—a modern-day scarlet letter—is also a serious deprivation of Plaintiff Holland's liberty.  As one district judge explained, "[r]equired wearing of an electronic bracelet, every minute of every day, with the government capable of tracking a person not yet convicted as if he were a feral animal would be considered a serious limitation on freedom by most liberty-loving Americans." *United States v. Polouizzi*, 697 F. Supp. 2d 381, 389 (E.D.N.Y. 2010).

76.    Among other burdens of the ankle bracelet, Plaintiff Holland must endure pain and discomfort from the bulky and heavy device, must sit next to an outlet for multiple hours a day to charge the monitor, may not fly on a commercial airline, cannot swim in a pool, suffers severe social stigma if he exposes his ankle bracelet in public, and automatically transmits every movement in his life to the state. *See Riley v. N. J. State Parole Bd.*, 423 N.J. Super. 224, 240 (App. Div. 2011) (discussing burden of an ankle bracelet); M.M., *Living With an Ankle Bracelet*, Marshall Project (July 16, 2015), http://bit.ly/2pr3Dnt (same); Maya Schenwar, *The Quiet Horrors of House Arrest, Electronic Monitoring, and Other Alternative Forms of Incarceration*, Mother Jones (Jan. 22, 2015), http://bit.ly/1GCHoxO.

77.    The United States Supreme Court has unanimously held that requiring a person to wear a GPS electronic monitor constitutes a Fourth Amendment search. *Grady v. North Carolina*, 135 S. Ct. 1368, 1371 (2015) (per curiam).

78.    The New Jersey Supreme Court has held that retroactively altering a convicted sex offender's conditions of sentence to include wearing an ankle bracelet is punitive and violates the Ex Post Facto Clause. *See Riley v. N. J. State Parole Bd.*, 219 N.J. 270 (2014).

79.    The requirement to report in person to the pretrial services office is also a restriction on Plaintiff Holland's liberty.  Among other things, the condition interferes with his job because he must perform the in-person reporting even if he has conflicting work obligations.

80.    Collectively, the restrictive conditions imposed on Plaintiff Holland are severely disruptive, cause him to worry about his job security, disrupt his family life and relationship with his son, and make him feel that his life is up in the air.

81.    Yet under the CJRA, the court was not even allowed to consider the liberty-preserving option of monetary bail before imposing these liberty-restricting conditions on Plaintiff Holland.

## CLASS ACTION ALLEGATIONS

### A.    General Class Action Allegations

82.    Plaintiff Holland brings this action, on behalf of himself and all others similarly situated, for the purpose of asserting the claims alleged in this complaint on a common basis.

83.    A class action is a superior means, and the only practicable means, by which Plaintiff Holland and unknown class members can challenge New Jersey's unconstitutional law restricting the liberty of Plaintiff Holland and similarly situated class members without providing the constitutionally required option of monetary bail.

84.    This action is brought and may properly be maintained as a class action pursuant to Federal Rule of Civil Procedure 23(a), 23(b)(2), and 23(b)(3).

85.    This action satisfies the numerosity, commonality, typicality, and adequacy requirements of Rule 23(a), as well as the predominance and superiority requirements of Rule 23(b)(2) and (b)(3), where applicable.

86.    Plaintiff Holland proposes a class seeking declaratory and injunctive relief and a class seeking damages relief.

87.    The Declaratory and Injunctive Relief Class is defined as:  All New Jersey criminal defendants who are or will be subject to the liberty-restricting

conditions of pre-trial release permitted by N.J.S.A. 2A:162-17b(2) without having the opportunity to be considered for release on monetary bail.

88.    The Damages Class is defined as:  All New Jersey criminal defendants who are are or who were (but are no longer) subject to the liberty-restricting conditions of pre-trial release permitted by N.J.S.A. 2A:162-17b(2) without having the opportunity to be considered for release on monetary bail, and who have suffered compensable harm as a result.

**B.    Rule 23(a)(1): Numerosity**

89.    The class is so numerous that joinder is impracticable.  The most recent available data shows that, in the first three months of 2017, approximately 7,579 individuals in New Jersey's Pretrial Monitoring System were released subject to non-monetary conditions, including 1,286 who were released subject to the most severe conditions including home detention and electronic monitoring.  N.J. Courts, *Criminal Justice Reform Statistics* at 3, http://bit.ly/2q68u9Y.

90.    The vast majority of these individuals were subjected to liberty-restricting conditions of pre-trial release without having the opportunity to be considered for release on monetary bail.

91.    The total number of individuals subjected to the challenged law—either in the past, currently, or in the future—will likely number in the tens of thousands.

**C.    Rule 23(a)(2): Commonality**

92.    Common questions of law or fact exist as to all members of the class.

93.    All class members seek relief on the common legal question whether New Jersey's law violates their constitutional rights by subjecting them to liberty-restricting conditions of release without providing them with an opportunity to be considered for release on monetary bail.

94.    All class members also present a common factual question in that they were released subject to liberty-restricting conditions without a consideration of bail.

95.    All members of the declaratory and injunctive relief class seek relief on the common legal question whether a declaratory judgment and injunctive relief are appropriate relief for the asserted constitutional violation.

96.    All members of the damages class seek relief on the common legal question whether damages are available for the asserted constitutional violation.

**D.    Rule 23(a)(3): Typicality**

97.    Plaintiff Holland's claims are typical of the claims of other members of the class.

98.    Like all members of the class, Plaintiff Holland was released subject to liberty-restricting conditions without having the opportunity to be considered for release on monetary bail.

99. Like all members of the class, Plaintiff Holland claims that New Jersey's law barring consideration of monetary bail before imposing liberty-restricting conditions violates his constitutional rights.

100. Like all members of the declaratory and injunctive relief class, Plaintiff Holland seeks a declaratory judgment that the law is unconstitutional and an injunction preventing New Jersey from enforcing it.

101. Like all members of the damages class, Plaintiff Holland suffered compensable harm as a result of the liberty-restricting conditions imposed on him and seeks damages to remedy that harm.

102. There is nothing distinctive about Plaintiff Holland's claim for declaratory relief, injunctive relief, or damages that would lead to a different result in his case than in any case involving other class members.

**E.    Rule 23(a)(4): Adequacy**

103. Plaintiff Holland is an adequate representative of the class because his interest in the vindication of his constitutional rights is entirely aligned with the interests of the other class members, each of whom has the same constitutional claims.

104. Plaintiff Holland is a member of the class, and his interests do not conflict with those of the other class members with respect to any claims.

105.   Plaintiff Holland is represented by attorneys from Kirkland & Ellis LLP and Robinson Miller LLC, who have extensive experience litigating complex civil rights matters in federal court and detailed knowledge of New Jersey's law and other relevant issues.

106.   Class counsel has undertaken a detailed investigation of New Jersey's policies, practices, and procedures as they relate to federal constitutional requirements.

107.   Class counsel has developed and continues to develop relationships with Plaintiff Holland and others similarly situated.  The interests of the members of the class will be fairly and adequately represented by Plaintiff Holland and his attorneys.

**F.     Rule 23(b)(2): Declaratory and Injunctive Relief Class**

108.   A class action is appropriate for the declaratory and injunctive relief class under Rule 23(b)(2) because New Jersey has acted on grounds that apply generally to the class—namely the new statute forbidding consideration of monetary bail if any combination of non-monetary conditions would reasonably assure a defendant's appearance at trial.

109.   The class seeks declaratory and injunctive relief to enjoin enforcement of the unconstitutional provisions of the statute.  That relief will necessarily apply to every member of the class and is thus appropriate respecting the class as a whole.

110.   Class status is particularly appropriate because there is an acute risk that any individual class member's claim for declaratory and injunctive relief will become moot before the litigation is finally resolved.

G.    **Rule 23(b)(3): Damages Class**

111.   A class action is appropriate for the damages class under Rule 23(b)(3) because questions of law or fact common to class members predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

112.   The predominant question in the case is whether the provisions of the CJRA allowing liberty-restricting conditions of release to be imposed without consideration of monetary bail is consistent with the Constitution.  This question of law and the most important questions of fact—that the class members were subjected to liberty-restricting conditions without consideration of bail—are common to all members of the class.  These questions predominate over any questions affecting only individual members, such as potential variations in damages.

113.   A class action is a superior mechanism for fairly and efficiently adjudicating the controversy because individual damage claims are likely to be relatively small, which would severely limit any individual class member's ability to obtain relief (especially considering that many class members are unlikely to be able to retain attorneys to pursue their small civil claims).

28

114.    A class action is also superior because litigating thousands of individual damages claims would be unnecessarily burdensome for the state and the courts and could produce unfair and inconsistent results.

115.    Individual members of the damages class do not have a strong interest in controlling the prosecution of separate lawsuits.  *See* Fed. R. Civ. P. 23(b)(3)(A). To the contrary, given the small claims at issue, they are unlikely to obtain any relief at all without aggregation.  And the class members' interests are wholly aligned with Plaintiff Holland's.  Finally, class counsel is highly experienced and competent to represent the members' individual and collective interests.

116.    Class counsel is not aware of any other pending litigation on the same issue.  *See* Fed. R. Civ. P. 23(b)(3)(B).

117.    It is desirable to concentrate this litigation in the District of New Jersey because the lawsuit concerns the constitutionality of a New Jersey law, all of the operative events take place in New Jersey, and any relevant evidence is likely to be found in New Jersey.  *See* Fed. R. Civ. P. 23(b)(3)(C).

118.    Class litigation would be manageable.  The Class is not so large as to be unwieldy, common questions predominate over individual issues, the Class is geographically concentrated, and aggregation will not present any difficulties related to notice.  *See* Fed. R. Civ. P. 23(b)(3)(D).

**COUNT ONE**
**VIOLATION OF RIGHT TO BAIL**
**(Eighth and Fourteenth Amendments)**

119.   Plaintiffs hereby re-allege and incorporate by reference the allegations in paragraphs 1-118.

120.   The Eighth Amendment provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."

121.   The Supreme Court has stated and the Third Circuit has held that the Eighth Amendment protection against excessive bail applies to the States.   *See McDonald v. City of Chicago*, 561 U.S. 742, 764 n.12 (2010); *Sistrunk v. Lyons*, 646 F.2d 64, 71 (3d Cir. 1981).

122.   The Eight Amendment's protection against "excessive bail" has always been understood to refer to monetary bail.   *See, e.g.*, *Salerno*, 481 U.S. at 754 ("bail must be set by a court *at a sum* designed to ensure" statutory objective) (emphasis added); *Stack*, 342 U.S. at 5 (describing bail as a "bond or the *deposit of a sum of money* subject to forfeiture") (emphasis added).

123.   The Eighth Amendment protection against pre-trial deprivation of liberty through "[e]xcessive bail" necessarily implies the option of bail to avoid a pre-trial deprivation of liberty in the first place, just as the Sixth Amendment right to a speedy trial implies the option of a trial.   Otherwise, the prohibition on excessive bail could be rendered superfluous by denying bail in all cases.

124.   The only way to give meaning to the Eighth Amendment protection against excessive bail is to recognize the logically antecedent "right to bail before trial."  *Stack*, 342 U.S. at 4; *see United States v. Motlow*, 10 F.2d 657, 659 (7th Cir. 1926) (Butler, Circuit J.) (Eighth Amendment "implies, and therefore safeguards, the right to give bail"); *Sistrunk*, 646 F.3d at 70 n.23 ("The constitutional right to be free from excessive bail thus shades into a protection against a denial of bail.").

125.   In other words, the Eighth Amendment "bail clause should be interpreted to protect and ratify the … right to bail as a fundamental principle of American criminal jurisprudence."  Verrilli, *Right to Bail*, 82 Colum. L. Rev. at 354.

126.   Although a court may deny bail when no amount of money will reasonably assure the defendant's presence at trial or when releasing the defendant would endanger the community, the Eighth Amendment requires that the option of bail remain available before a defendant is deprived of pre-trial liberty outside such "carefully limited exception[s]."  *Salerno*, 481 U.S. at 753-55.

127.   The CJRA violates the Eighth Amendment by permitting judges to consider monetary bail "only when it is determined that no other conditions of release will reasonably assure the eligible defendant's appearance in court when required."  N.J.S.A. 2A:162-15; *see* N.J.S.A. 2A:162-17c(1).

128.   Moreover, because the permissible "conditions of release" that courts must consider before offering monetary bail include extremely restrictive conditions

like electronic monitoring and home detention, the law not only subordinates monetary bail to other conditions (which are not constitutionally protected), but effectively takes monetary bail off the table as an option entirely.

129.   New Jersey's law is unprecedented.  Even jurisdictions like the District of Columbia, where monetary bail does not exist as a practical matter, do not formally subordinate bail to other, more restrictive conditions in the way that New Jersey does.  *See* D.C. Code §23-1321(c)(1)(B)(xiii) (allowing consideration of monetary bail alongside other conditions).

130.   By imposing substantial deprivations of pre-trial liberty on Plaintiff Holland and other presumptively innocent defendants without offering the option of non-excessive bail to assure their appearance at trial, Defendants violate Plaintiffs' Eighth Amendment rights.

131.   Defendants' violation of Plaintiffs' Eighth Amendment rights has caused them substantial damages.

## COUNT TWO
## DEPRIVATION OF LIBERTY WITHOUT DUE PROCESS OF LAW
### (Fourteenth Amendment)

132.   Plaintiffs hereby re-allege and incorporate by reference the allegations in paragraphs 1-131.

133.   The Fourteenth Amendment Due Process Clause provides that no State shall "deprive any person of life, liberty, or property, without due process of law."

134.   The Due Process Clause's protection of "liberty" has "always … been thought to encompass freedom from bodily restraint and punishment." *Ingraham v. Wright*, 430 U.S. 651, 673-74 (1977).

135.   The protection against bodily restraint includes not only freedom from "government custody, detention, or other forms of physical restraint," *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001), but also "the right to move freely about one's neighborhood or town," *Lutz v. City of York*, 899 F.2d 255, 268 (3d Cir. 1990); s*ee also* 1 William Blackstone, *Commentaries* *134 ("personal liberty consists in the power of locomotion, of changing situation, or moving one's person to whatsoever place one's own inclination may direct, without imprisonment or restraint, unless by due course of law").

136.   The Due Process Clause's protection of liberty applies to criminal defendants awaiting trial, who "remain clothed with a presumption of innocence and with their constitutional guarantees intact." *Pugh v. Rainwater*, 572 F.2d 1053, 1056 (5th Cir. 1978) (en banc).

137.   Under the Due Process Claus, "liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *Salerno*, 481 U.S. at 755.

138.   As a "general rule," therefore, "the government may not detain a person prior to a judgment of guilt in a criminal trial." *Id.* at 749.

139.   By subjecting Plaintiff Holland and other presumptively innocent criminal defendants to restrictive conditions of release, including home detention and GPS monitoring through an ankle bracelet, Defendants intrude on the constitutionally protected right to liberty—"freedom from bodily restraint." *Ingraham*, 430 U.S. at 674.

140.   "Every confinement of the person is an imprisonment, whether it be in a common prison or in a private house, … and when a man is lawfully in a house, it is imprisonment to prevent him from leaving the room in which he is." *Wallace v. Kato*, 549 U.S. 384, 388-89 (2007) (quotation marks omitted).

141.   By imposing liberty-restricting conditions on Plaintiff Holland and other presumptively innocent criminal defendants without offering them the historically-required option of non-excessive monetary bail that would reasonably assure their appearance at trial and protect the community, Defendants violate the procedural component of the Due Process Clause.

142.   Defendants also violate Plaintiffs' substantive rights under the Due Process Clause because the option of non-excessive bail for a bailable offense is "fundamental to *our* scheme of ordered liberty" and "deeply rooted in this Nation's history and tradition." *McDonald*, 561 U.S. at 767.

143.   The Supreme Court has held that bail is "basic to our system of law," *Schilb*, 404 U.S. at 365, and a "constitutional privilege" to which pre-trial defendants are "entitled," *United States v. Barber*, 140 U.S. 164, 167 (1891).

144.   The Supreme Court has equated the "traditional right to freedom before conviction" with the "right to bail before trial."  *Stack*, 342 U.S. at 4.

145.   The Third Circuit has similarly held that "bail constitutes a fundament of liberty underpinning our criminal proceedings" that "has been regarded as elemental to the American system of jurisprudence."  *Sistrunk*, 646 F.2d at 70.

146.   Likewise, bail is deeply rooted in this Nation's history and tradition. The right to bail predates the Constitution, having been recognized in the Massachusetts Body of Liberties in 1641 and other fundamental documents of the Founding Era; having been protected by federal law since the Northwest Ordinance of 1787 and the Judiciary Act of 1789; and having been protected in the overwhelming majority of state constitutions.

147.   The right to bail enjoys a historical pedigree that is as well-established—if not more so—than other rights protected by the Due Process Clause. For example, when the Fourteenth Amendment was ratified in 1868, 22 of 37 state constitutions included the right to keep and bear arms that the Supreme Court found protected by the Due Process Clause in *McDonald*, 561 U.S. at 777.  An even greater number—29 state constitutions—protected a right to bail.  *See* Matthew J.

35

Hegreness, *America's Fundamental and Vanishing Right to Bail*, 55 Ariz. L. Rev. 909, 934-35 (2013).

148.   In sum, if a defendant's right to be free from restrictions on his liberty without first being offered the option of non-excessive monetary bail is not directly protected by the Eighth Amendment, it must be protected by the Due Process Clause of the Fourteenth Amendment.

149.   Defendants' violation of Plaintiffs' rights under the Due Process Clause has caused them substantial damages.

**COUNT THREE**
**UNREASONABLE SEARCH AND SEIZURE**
**(Fourth and Fourteenth Amendments)**

150.   Plaintiffs hereby re-allege and incorporate by reference the allegations in paragraphs 1-149.

151.   The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."

152.   The Fourth Amendment applies against the States through the Fourteenth Amendment.  *See, e.g.*, *Camara v. Mun. Ct. of City & Cty. of S.F.*, 387 U.S. 523, 528 (1967).

153.   Subjecting a person to a GPS-tracking electronic monitor constitutes a Fourth Amendment "search."  *Grady*, 135 S. Ct. at 1369.

154.   Likewise, pre-trial release conditions such as home detention and mandatory reporting to pre-trial services constitute a Fourth Amendment "seizure." *United States v. Jacobsen*, 466 U.S. 109, 113 n.5 (1984) (a "meaningful interference, however brief, with an individual's freedom of movement" is a seizure).

155.   A criminal defendant who has been released before trial "does not lose his or her Fourth Amendment right to be free of unreasonable" searches and seizures. *United States v. Scott*, 450 F.3d 863, 868 (9th Cir. 2006).

156.   Moreover, a defendant's consent to Fourth Amendment searches or seizures as a condition of release does not immunize the restrictions from constitutional scrutiny.  *Id.* at 866.

157.   The reasonableness of a Fourth Amendment search or seizure is determined "by assessing, on the one hand, the degree to which it intrudes upon an individual's privacy and, on the other, the degree to which it is needed for the promotion of legitimate governmental interests."  *Wyoming v. Houghton*, 526 U.S. 295, 300 (1999).

158.   The degree to which the search and seizure, particularly the 24-hour GPS electronic monitoring through an ankle bracelet, intrudes on Plaintiff Holland's privacy is severe.  Not only does the ankle bracelet severely restrict Plaintiff's freedom of movement—requiring him, for example, to stay within cord-length of a power outlet while the device is charging for multiple hours a day and preventing

37

him from traveling on a commercial airplane—but the device also discloses a massive amount of private information about Plaintiff Holland's life to the state.

159.   "GPS monitoring generates a precise, comprehensive record of a person's public movements that reflects a wealth of detail about her familial, political, professional, religious, and sexual associations." *United States v. Jones*, 565 U.S. 400, 415 (2012) (Sotomayor, J., concurring).

160.   The intrusion on Plaintiff's privacy is particularly severe because it reaches into his home, where his interest in privacy is "at its zenith." *Scott*, 450 F.3d at 871; *see United States v. Karo*, 468 U.S. 705, 714 (1984).

161.   On the other side of the balance, Defendants cannot show that intrusive electronic monitoring of the kind imposed on Plaintiff Holland is "*needed* for the promotion of" their "legitimate governmental interest[]" in securing his appearance at trial when state law prohibited consideration of a less restrictive mechanism that has been used to promote precisely that governmental interest for almost the entire history of Anglo-American law: monetary bail.  *Houghton*, 526 U.S. at 300 (emphasis added).

162.   It is particularly unreasonable to prohibit consideration of monetary bail to fulfill the state's legitimate governmental interest when monetary bail is *protected by the Constitution*.

163.   Defendants' search and seizure violates the Fourth Amendment.

38

164. Defendants' violation of Plaintiffs' Fourth Amendment rights has caused them substantial damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court:

A.    Enter judgment in their favor;

B.    Certify a class as described above, pursuant to Plaintiff Holland's forthcoming class certification motion;

C.    Declare that the CJRA violates the Eighth Amendment right of Plaintiff Holland and other presumptively innocent criminal defendants to the option of non-excessive monetary bail that will reasonably assure their appearance at trial before being subjected to severe restrictions of their pre-trial liberty;

D.    Declare that the CJRA violates the procedural and substantive due process rights of Plaintiff Holland and other presumptively innocent criminal defendants to the option of non-excessive monetary bail that will reasonably assure their appearance at trial before being subjected to severe restrictions of their pre-trial liberty;

E.    Declare that the CJRA violates the Fourth Amendment rights of Plaintiff Holland and other presumptively innocent criminal defendants to be free from unreasonable searches and seizures;

F.      Enter a preliminary injunction preventing Defendants and their agents from enforcing the provisions of the CJRA that allow them to impose severe restrictions on the pre-trial liberty of Plaintiff Holland and other presumptively innocent criminal defendants without offering the option of non-excessive monetary bail that will reasonably assure their appearance at trial;

G.      Enter a permanent injunction preventing Defendants and their agents from enforcing the provisions of the CJRA that allow them to impose severe restrictions on the pre-trial liberty of Plaintiff Holland and other presumptively innocent criminal defendants without offering the option of non-excessive monetary bail that will reasonably assure their appearance at trial;

H.      Award Plaintiffs damages to compensate for the injuries they have suffered as a result of Defendants' unconstitutional conduct;

I.      Award Plaintiffs the costs of their suit, including attorney fees and costs, pursuant to 42 U.S.C. §1988;

J.      Grant any other and further relief that the Court deems just and proper.

                                        Respectfully submitted,

                                        s/Michael F. Williams
JUSTIN T. QUINN                         PAUL D. CLEMENT*
ROBINSON MILLER LLC                     MICHAEL F. WILLIAMS
One Newark Center                       CHRISTOPHER G. MICHEL*
19th Floor                              ANDREW C. LAWRENCE*
Newark, NJ 07102                        KIRKLAND & ELLIS LLP
973-690-5400                            655 Fifteenth Street, NW
                                        Washington, DC 20005
                                        (202) 879-5000
                                        michael.williams@kirkland.com

                        *Counsel for Plaintiffs*

\* *Pro hac vice* motions to be filed.


June 14, 2017

## VERIFICATION

I, Brittan B. Holland, declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Dated: June 12, 2017

Brittan B. Holland

1

## VERIFICATION

On behalf of Lexington National Insurance Corporation, I, Nicholas J. Wachinski, having authority to make this verification as Chief Executive Officer of the corporation, declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.


Dated: June 13, 2017

Nicholas J. Wachinski